RENDERED: APRIL 26, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2017-SC-000010-WC

FINAL

DATE 5/17/18 Kim Redmon, DC

FORD MOTOR COMPANY                                                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2016-CA-000258-WC
WORKERS' COMPENSATION NO. 13-WC-00800


DONALD JOBE, HON. JOHN B. COLEMAN,                              APPELLEES
ADMINISTRATIVE LAW JUDGE, AND
WORKERS' COMPENSATION BOARD


**OPINION OF THE COURT BY JUSTICE WRIGHT**

**<u>AFFIRMING</u>**


Appellee, Donald Jobe, has worked for Appellant, Ford Motor Company, since 2001. In 2012, Jobe suffered a right hip injury stemming from an accident at Ford's Louisville plant. Ford accepted the hip injury as work-related and covered Jobe's medical bills regarding his hip. Jobe asserted he also sustained a low back impairment due to the hip injury. However, Ford disputed that Jobe's back pain had a causal connection to his work-related hip injury. The administrate law judge (ALJ) found that Jobe's work-related hip injury was a proximate cause of his low back impairment. Due to the causal relationship, the ALJ awarded Jobe benefits regarding his back. The ALJ awarded Jobe benefits for a 14% permanent partial disability, temporary total disability benefits for the periods he was off work due to his back impairment, and medical benefits. Ford appealed to the Workers' Compensation Board,

disputing the finding that Jobe's low back impairment has a causal connection to the work-related injury. The Workers' Compensation Board affirmed the ALJ's decision, holding the ALJ had substantial evidence to support his decision. Ford appealed the Board's decision to the Court of Appeals, which affirmed. Ford now appeals the Court of Appeals' decision to this Court as a matter of right. *See Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990); Ky. Const. § 115.

## I. BACKGROUND

On January 25, 2012, Jobe tripped due to a gap between two rubber floor mats while working on Ford's assembly line. When he tripped, Jobe felt a popping sensation in his right hip. He provided Ford with notice of his injury and went to the Ford Medical Department. Shortly thereafter, Jobe began to experience right hip pain. He sought medical treatment for this pain and was treated by a series of physicians who were unable to diagnose the cause of the hip pain. Jobe saw Dr. Nazar who, according to the ALJ's report, referred Jobe to a hip specialist. That hip specialist believed Jobe's problems stemmed from a low back condition. Thereafter, Jobe saw Dr. Guarnaschelli who opined on September 6, 2012, that Jobe sustained a work-related injury which resulted in complaints of persistent back and hip pain. (Later, Dr. Guarnaschelli contradicted this statement when he indicated on an FMLA form that Jobe's low back condition was not due to his occupation.) Dr. Guarnaschelli performed back surgery on March 23, 2013, but Jobe continued to experience pain.

Jobe testified that he believed his back surgery and other medical treatment for his back was performed in the interest of resolving the pain from his work-related hip injury. He testified he had the back surgery because Dr. Guarnaschelli recommended it as a solution to his hip pain. After his back surgery, Jobe underwent right hip surgery on February 13, 2014. He testified that, unlike the back surgery, the surgery on the right hip substantially improved his condition.

Over the course of his treatment, Jobe was off work during several intervals. Jobe did not return to work following his injury until July 2013. He was placed under restriction and did not return to his previous job, but instead, was assigned the job of driving trucks off the assembly line. Jobe was then taken off work again on September 3, 2013. When he returned to work on October 4, 2013, Jobe continued driving trucks off the assembly line until October 15, 2013, when he was taken off work yet again. When Jobe returned to work on July 8, 2014, he was placed back on regular duty and subsequently obtained an inspector position—which is his current position with Ford.

Before his most recent return to work, Jobe underwent an independent medical evaluation (IME) on June 9, 2014. Dr. Farrage performed the IME, and opined that Jobe's low back problem was work-related. He testified it was possible for low back problems to present as hip pain. The ALJ noted that Dr. Farrage indicated there could have been degenerative changes in Jobe's back which were dormant prior to the work injury, but "brought into disabling reality by the work incident." The ALJ further stated that "Dr. Farrage

3

explained the treating surgeon felt the lumbar surgery was necessary following failure of conservative treatment and there was a reasonable expectation the procedure would address the right hip pain."

On August 6, 2015, the ALJ rendered an opinion awarding Jobe permanent partial disability benefits from Ford for his 14% permanent partial disability, beginning from the date of injury. This 14% impairment rating is a combined percentage of the 3% impairment for the right hip injury and the 11% impairment for the low back injury. Further, the ALJ's opinion ordered Ford to pay all reasonable and necessary medical expenses for the cure and relief of Jobe's right hip and low back injuries pursuant to KRS 342.020, and to pay temporary total disability benefits for the periods of time Jobe was off work due to his work-related hip and back issues.

Ford appealed to the Board, arguing that it should not be liable for the disability attributable to Jobe's back condition. It further argued that the ALJ engaged in unsupported speculation when he concluded the only reason Jobe underwent the lumbar surgery was due to a failure to find the source of his hip pain. Ford asserted this speculation was not supported by substantial evidence. It contended Jobe would have undergone back surgery regardless of the work-related hip injury, and that the award of permanent partial disability benefits and temporary total disability benefits attributable to the back condition should be vacated.

The Board held that Jobe was successful in his burden of proving each essential element of his cause of action, leaving the only question on appeal to

4

be whether there was substantial evidence to support the ALJ's decision. The Board held that Dr. Guarnaschelli's September 6, 2012 report and Dr. Farrage's report constituted substantial evidence.

Ford appealed to the Court of Appeals, which affirmed the Board's decision. That court held that causation of the back injury was a factual issue and that the ALJ relied on substantial evidence in finding the back injury to be work-related. Ford now appeals the Court of Appeals' decision to this Court as a matter of right. *See Vessels*, 793 S.W.2d at 798; Ky. Const. § 115.

## II. STANDARD OF REVIEW

Our standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact. "As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*." *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009).

As to questions of fact, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Furthermore,

> KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence. As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. KRS 342.285(2) and KRS

5

342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

*Abel Verdon Const. v. Rivera*, 348 S.W.3d 749, 753–54 (Ky. 2011) (footnotes omitted).

"Where the party with the burden of proof was successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion." *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367 (Ky. 1971).

### III. ANALYSIS

Ford argues the Board acted outside its scope of review and issued a new finding of fact as to causation. This Court has held: "[w]here the ALJ determines that a worker has satisfied his burden of proof with regard to a question of fact, the issue on appeal is whether substantial evidence supported the determination." *McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001). Review of the Board's decisions is governed by KRS 342.290, which reads:

> The decision of the board shall be subject to review by the Court of Appeals pursuant to Section 111 of the Kentucky Constitution and rules adopted by the Supreme Court. The scope of review by the Court of Appeals shall include all matters subject to review by the

6

board and also errors of law arising before the board and made reviewable by the rules of the Supreme Court for review of decisions of an administrative agency.

As to appellate review of the Board's decisions, we have held:

> The function of further review of the [Board] in the Court of Appeals is to correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. The function of further review in our Court is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude.

*W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992).

The Court of Appeals reviewed the Board's decision and stated "[t]he ALJ reviewed the evidence and made the factual finding that Jobe sustained his burden of proving the lumbar condition was due to a work-related injury." As the Court of Appeals pointed out, the Board was tasked with determining whether the ALJ's findings of fact were based on substantial evidence. After examining the evidence, the Board believed the ALJ had based his opinion on the requisite evidence of substance. The Court of Appeals agreed and affirmed.

Ford insists the ALJ failed to make a finding of a causal connection between Jobe's work at Ford and his back condition. However, that is simply not the case. The ALJ likened Jobe's case to *Coleman v. Emily Enterprises*, 58 S.W.3d 459 (Ky. 2001) and stated:

> In that case, the plaintiff's injury was not the direct cause of his development of a psychological disorder. Instead, the psychological disorder developed as result of the failure to provide prompt medical treatment for the work-related physical injury. In this instance, it was also the plaintiff's work-related hip injury which led him to undergo a low back surgery which led to his impairment.

7

As for Jobe, the ALJ found:

> [Jobe] underwent the surgery because the doctors were unable to accurately diagnose his work related condition. [One of the many doctors Jobe saw] pointed out that the lumbar spine was evaluated only because of the difficulty in making a diagnosis for the causation of his right hip pain. In other words, the only reason, [Jobe] underwent low back evaluation and subsequent surgery was because of the difficulty in making the work related right hip diagnosis. As such, the low back impairment resulting from the surgery is related to the plaintiff's work related right hip injury and is therefore compensable.

The ALJ would have been hard-pressed to make a more explicit finding as to the causation of Jobe's back impairment. Ford argues that Jobe "did not submit proof that the surgery was unnecessary and there is no 'substantial evidence' that 'but for' the hip injury, the back condition would have never required . . . surgery." However, the ALJ found that but for Jobe's work-related hip injury, he would not have undergone back surgery. Therefore, the ALJ found that Jobe's work-related injury was both the proximate and but-for cause of his back impairment.

Ford insists that the ALJ's finding that there was a causal relationship between Jobe's hip injury and his back impairment was a question of law rather than a question of fact. Therefore, Ford asks this Court to review the issue de novo. However, this argument fails, as "[c]ausation is a matter to be decided by the fact-finder." *Coleman*, 58 S.W.3d at 462. Though it is not entirely clear, Ford's argument as to what it terms the "legal aspect of causation" may revolve around whether Jobe's back surgery was an intervening

8

cause of his impairment—thus rendering his back impairment non-compensable. It was not.

Our predecessor Court held long ago "[t]he general rule is that compensation must be allowed for all of the injurious consequences flowing from the original injury, and not attributable to an independent, intervening cause." *Beech Creek Coal Co. v. Cox*, 314 Ky. 743, 744 (1951). In that case, the injured employee followed his prescribed treatment instructions to walk around following surgery "in order to expedite healing by stimulating circulation, reducing stiffness of the knee and ankle joints, and restoring the general muscle tone." *Id.* However, his compliance with treatment orders for the initial work-related injury led to a second injury. The Court stated,

> The surgeon testified: 'It is my opinion that he, Levi Cox, would have been much less likely to have fallen and fractured the bone the second time had his joints not been stiff from the treatment of the first fracture.' While the X-ray revealed no physical connection between the first and the second fracture an inch above it, we believe that the Workmen's Compensation Board was justified in concluding, as did the surgeon, that the handicap the man suffered from his first injury was a highly contributing factor in causing the second injury.

*Id.* at 744–45.

Furthermore, in *Pond Creek Collieries Co. v. La Santos*, 307 Ky. 866, 868 (1948), the parties disputed whether the injured employee's broken hip resulted from his accident at work or during the course of his treatment therefor. There, the Court stated: "even if his hip was fractured when he fell from or beside his hospital bed, this occurred during his medical treatment . . . and as a direct and proximate result of the original injury suffered in an

9

'accident arising out of and in the course of his employment.' . . . . In such cases the ultimate disability should be compensable."

Just as the injured employees in *Cox* and *La Santos* suffered further injuries due to their treatment for work-related injuries, Jobe followed his doctor's recommended course of treatment for his hip pain when he underwent back surgery. The ALJ found this back surgery caused Jobe's back impairment, and that Jobe's work-related hip injury "led him to undergo" said surgery.[1]

The ALJ's finding as to causation was supported by substantial evidence. The ALJ exhaustively discussed the many doctors who had seen Jobe for his hip and back and their various reports and opinions. For example, the ALJ's opinion cited Dr. Guarnaschelli's initial note on September 6, 2012, which read: "the plaintiff sustained a work-related injury resulting in complaints of persistent back pain as well as bilateral hip and upper thigh pain." Furthermore, the ALJ opinion discussed Dr. Farrage's opinion that Jobe's back impairment was related to the work incident.

---

[1] Ford asserts "[t]he Court of Appeals erroneously relied upon the Board's faulty premise that absent a Petition for Reconsideration, its scope of review is limited to whether substantial evidence exists." The Board stated that "[i]n the absence of a petition for reconsideration, concerning questions of fact, the Board is limited to a determination of whether there is substantial evidence contained in the record to support the ALJ's conclusion." Ford's argument that the Board failed to review the legal issue of causation is unpersuasive because, as noted, causation is a factual issue. The Board could have also reviewed questions of law, but stated they were limited in their review of factual issues to whether the ALJ's findings were supported by substantial evidence. This is the proper standard as to factual issues—and both the Board and Court of Appeals each applied it in this case.

10

Ford disagrees with the ALJ's conclusion and would have us hold that Jobe failed to meet his burden of proof that he sustained a work-related injury to his back. It asserts that the ALJ "engaged in unsupported medical speculation when concluding that the only reason [Jobe] underwent lumbar surgery was due to a failure to find the source of his hip pain." We disagree. In spite of Jobe's history of prior back problems (which the ALJ also details in his opinion), there was substantial medical evidence that the back surgery was an attempt to alleviate Jobe's hip and leg pain.

While not all the evidence the ALJ recounted was in Jobe's favor (such as Dr. Guarnaschelli's later indication that Jobe's low-back condition was not due to his occupation), it was well within the discretion of the ALJ to choose which evidence to believe. We will not disturb the ALJ's finding unless its basis lacks substantial evidence in the record. That is not the case here. The fact that an opposite conclusion could have also been supported by substantial evidence makes no difference in our analysis. *See McNutt Constr.*, 40 S.W.3d at 860.

As we hold that the ALJ based his decision that Jobe's back impairment was work-related on substantial evidence, we reject Ford's final argument that we should vacate Jobe's award of temporary total disability benefits for the periods of time he was off work due to his back impairment. We affirm the Court of Appeals on all grounds. Therefore, the ALJ's award of permanent partial disability benefits, temporary total disability benefits, and medical benefits stands.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

Minton, C.J.; Cunningham, Hughes, Keller, Venters, Wright; JJ., concur.

VanMeter, J., not sitting.

COUNSEL FOR APPELLANT:

Elizabeth M. Hahn
O'Bryan Brown & Toner, PLLC

COUNSEL FOR APPELLEE:

Joy Buchenberger
Jennings Law Offices

12