RENDERED: JUNE 16,2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0248-WC

JARVIS HELTON                                                                          APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2020-CA-1589
WORKERS' COMPENSATION
NOS. 2019-WC-01426, 2019-WC-01427 & 2020-WC-00095

ROCKHAMPTON ENERGY, LLC;                                                   APPELLEES
HONORABLE CHRIS DAVIS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

Jarvis Helton appeals from a Court of Appeals' decision affirming the

Workers Compensation Board's (Board's) reversal of an Administrative Law

Judge's (ALJ) application of the 2x multiplier in Kentucky Revised Statute

(KRS) 342.730(1)(c)2. That provision doubles a claimant's benefits if the

claimant returns to work after injury at the same or higher wages but then

experiences a cessation of that employment. After suffering a work-related

injury that manifested on November 16, 2018, Helton continued working his

normal job until he was laid off for economic reasons on September 2, 2019.

The ALJ determined that since Helton earned no wage after the lay-off, he

qualified for the 2x multiplier. The Board reversed the ALJ's application of the

2x multiplier, determining that there was no "return" to work pursuant to KRS 342.730(1)(c)2 because there was never a cessation on Helton's part followed by a resumption. The Court of Appeals agreed, and this appeal followed. For the reasons stated below, we affirm the Court of Appeals.

### FACTS AND PROCEDURAL HISTORY

Jarvis Helton began working in the mining industry in 1989 and started his employment with Rockhampton Energy in 2013 as an underground electrician and repairman. On September 2, 2019, he was laid off for economic reasons and started receiving unemployment benefits. Helton filed a workers' compensation claim on November 19, 2019, alleging cumulative trauma injuries to his neck and low back he suffered while working for Rockhampton Energy.[1] As of the date of the ALJ's award, July 7, 2020, Helton was still receiving unemployment benefits.

A Benefit Review Conference was held on April 15, 2020, and the contested issues included benefits per KRS 342.730. A final hearing was conducted on May 13, 2020. The ALJ relied on the medical evidence to determine that Helton's back and neck injuries were the result of work-related

---

[1] Helton also filed a claim for occupational hearing loss caused by loud noise exposure while working for Rockhampton Energy. He later added a claim alleging he contracted coal workers' pneumoconiosis from his employment with Rockhampton Energy. All claims were consolidated. Because the issues on appeal only concern Helton's neck and back injuries, we will not discuss the details related to his other claims.

2

cumulative trauma and assessed a 10% impairment rating. The ALJ further found the date of manifestation of these injuries was November 16, 2018.[2]

The ALJ determined that Helton retained the physical capacity to return to the type of work performed on the date of his injury. The ALJ noted that Helton "was laid-off for economic reasons, not job performance, and that he did not voluntarily quit." While Helton's pain may have increased, there was no evidence that he would not have kept working if he could. The ALJ determined the 2x multiplier applied pursuant to KRS 342.730(1)(c)2. That subsection provides that:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

The ALJ stated that "following November 16, 2018, his date of manifestation, [Helton] worked for another 9.5 months, at his normal rate of pay." The ALJ increased the award of permanent partial disability benefits beginning on September 3, 2019, when Helton was laid off by Rockhampton Energy and

---

[2] In filing his workers' compensation claim, Helton listed his date of injury as September 2, 2019, his last day of work. Dr. C. A. Moore informed Helton that his conditions were work-related on November 16, 2018, and Helton did not notify his employer until the claim was filed on November 19, 2019. The ALJ determined that the delay was excusable because Helton did not know his injuries were compensable.

3

thus ceased earning an equal or greater wage than his average weekly wage. The ALJ ordered that from November 16, 2018, to September 2, 2019, Helton recover from Rockhampton Energy $59.49 per week and $118.98 from September 3, 2019, until his weekly wage is equal to or greater than his average weekly wage of $1,400, for a total of 425 weeks.

Rockhampton Energy appealed to the Board and argued, among other things, that the 2x multiplier was inapplicable. The Board agreed.

> It is undisputed Helton continued to perform his regular job after his low back and neck symptoms arose and worsened to the point he sought medical care. Helton only ceased working when he was laid off due to the mine closing on September 2, 2019. Helton has not returned to any work since the date of the layoff. . . . [T]he ALJ found the two-multiplier applicable beginning September 3, 2019, when Helton stopped earning any wages due to the layoff. As in [*Bryant v. Jessamine Car Care*, No. 2018-SC-000265-WC, 2019 WL 1173003 (Ky. February 14, 2019)], there was no "return" to work pursuant to KRS 342.730(1)(c)(2) because there was no cessation followed by a resumption. Helton simply continued in his regular employment until he was laid off. Therefore, we reverse the ALJ's determination that the two-multiplier is applicable beginning September 3, 2019.

The Court of Appeals agreed with the Board, finding no error in its analysis. The appellate court concurred with the Board's reliance on an unpublished opinion by this Court, *Bryant*, 2019 WL 1173003, at *1. In *Bryant,* the employee was injured on June 13, 2013, and continued working until he was terminated in September 2013. This Court held that the 2x multiplier "only applies if the claimant returns to work after the injury. After Bryant was terminated, he did not *return* to work." *Id.* at *7. Because Bryant continued to work until his September discharge, his "continuation of work is not a return to work under KRS 342.730(1)(c)2. To qualify as such a 'return,'

4

there must be a cessation followed by a resumption." *Id.* Applying the rationale from *Bryant*, in addition to the plain language of the statute, the Court of Appeals concluded that because Helton continued working from the manifestation date of his injury until his layoff, the 2x multiplier was inapplicable. Helton appealed.

## ANALYSIS

Helton argues that the Board and Court of Appeals erred in reversing the ALJ's decision to apply the 2x multiplier. He asserts that these determinations were based on a misunderstanding of the evidence of record. According to Helton, all of the medical evidence, as well as his own testimony, proves that he is entitled to the 2x multiplier.

In a workers' compensation case, the claimant has the burden of proving every element of her claim. *Gibbs v. Premier Scale Co./Ind. Scale Co.,* 50 S.W.3d 754, 763 (Ky. 2001). We are not bound by the ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. *Ford Motor Co. v. Jobe,* 544 S.W.3d 628, 631 (Ky. 2018). Helton's claim of error involves the ALJ's application of the 2x multiplier statutory provision to the facts of his claim and therefore our standard of review is de novo. *Id.*

An obvious purpose of KRS 342.730(1)(c)(2) is to encourage continued employment. *Livingood v. Transfreight, LLC,* 467 S.W.3d 249, 257 (Ky. 2015). Additionally,

> [t]he purpose of KRS 342.730(1)(c) 2 is to keep partially disabled workers in the habit of working and earning as much as they are able. It creates an incentive for them to return to work at which

5

they will earn the same or a greater average weekly wage by permitting them to receive a basic benefit in addition to their wage but assuring them of a double benefit if the attempt proves to be unsuccessful.

*Toy v. Coca Cola Enters.,* 274 S.W.3d 433, 435 (Ky. 2008).

KRS 342.730(1)(c)2 begins with the following language: "[i]f an employee returns to work . . . ." Here, Helton did not "return" to work because he never left work. Further, at the time the ALJ entered the Opinion, Award and Order, Helton was still receiving unemployment benefits.

We agree with the Board and the Court of Appeals that this case is similar to *Bryant,* 2019 WL 1173003, at \*1. In that case, the claimant was injured while working as a technician at Jessamine Car Care on June 13, 2013. *Id.* Despite his injury, the claimant continued to work at his regular job until September 25, 2013, when he was terminated. *Id.* Thereafter, the claimant did not return to work. *Id.* at \*7. The ALJ determined that the claimant was entitled to the 2x multiplier after his employment was terminated. *Id.* at \*2. The Board and the Court of Appeals affirmed, but this Court reversed:

> [T]he ALJ erred in determining the 2 multiplier applied under KRS 342.730(1)(c)2. That multiplier only applies if the claimant returns to work after the injury. After Bryant was terminated, he did not *return* to work. ALJ Coleman cited to Bryant's June 2013 injury but that he continued to work until September. However, this *continuation* of work is not a return to work under KRS 342.730(1)(c)2. To qualify as such a "return," there must be a cessation followed by a resumption. Bryant simply continued on in his regular employment until he was discharged. Since that time, ALJ Coleman made no finding of a "return" to employment at a wage equal to or greater than his average weekly wage at the time of injury. The 2 multiplier has no bearing on Bryant's case.

6

*Id.* at *7.

Helton indisputably continued to perform his regular job after his low back and neck symptoms arose and worsened to the point where he sought medical care in late 2018. Helton only ceased working when he was laid off due to the mine closing on September 2, 2019. Pursuant to KRS 342.730(1)(c)2, no "return" to work occurred because there was no cessation followed by a resumption. Helton simply continued his regular employment until he was laid off along with other Rockhampton Energy employees.

We recognize that Helton's employment with Rockhampton Energy ended for reasons he could not control. However, the purposes of KRS 342.730(1)(c)2 are to "encourag[e] continued employment," *Livingood,* 467 S.W.3d at 257, and "create[] an incentive . . . to return to work," *Toy,* 274 S.W.3d at 435. Helton continued performing his regular job after his low back and neck symptoms arose and the ALJ determined that Helton retains the physical capacity to return to the type of work performed on the date of his injury. Awarding the 2x multiplier in this instance does not accomplish these recognized objectives and, more importantly, does not comport with the plain language of the statute. The legislature has expressly authorized the 2x multiplier only where an employee "returns to work" and then experiences "a period of cessation of that employment." KRS 342.730(1)(c)2.

## **CONCLUSION**

Because the ALJ misapplied the law to the facts, we affirm the Court of Appeals' decision affirming the Board which reversed in part and remanded the ALJ's opinion and order as to the application of the 2x multiplier.

Minton, C.J.; Conley, Keller, Nickell, and VanMeter, JJ., sitting. All concur. Lambert, J., not sitting.

COUNSEL FOR APPELLANT:

McKinley Morgan
W. Gerald Vanover
Dan Scott
Morgan, Collins, Yeast & Salyer

COUNSEL FOR APPELLEE:

Sara May
Jones & Jones PLLC

ADMINISTRATIVE LAW JUDGE:

Hon. Chris Davis

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman